**VERMONT LOW INCOME ADVOCACY COUNCIL, INC., Plaintiff-Appellant,**

v.

**William J. USERY, Secretary of Labor, Defendant-Appellee.**

No. 145, Docket 76-6077.

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1976.

Decided Dec. 9, 1976.

Michael H. Lipson, Burlington, Vt. (John A. Dooley, III, and Vermont Legal Aid, Inc., Burlington, Vt., of counsel), for plaintiff-appellant.

Eloise E. Davies, Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., George W. F. Cook, U. S. Atty., Rutland, Vt., Leonard Schaitman, Dept. of Justice, Washington, D. C., of counsel), for defendant-appellee.

Before LUMBARD, FRIENDLY and MULLIGAN, Circuit Judges.

FRIENDLY, Circuit Judge:

This appeal arises under the provision of the Freedom of Information Act (FOIA), § 552(a)(4)(E),[1] authorizing a court to award reasonable attorney fees and other litigation costs in any case where the complainant has substantially prevailed. Although we do not agree with so much of the decision of the district court as indicates that an order directing production is a necessary condition for an award of attorney fees and costs under the FOIA, we affirm the denial of an award on the facts of this case.

By letter of August 28, 1975, a request was made under the FOIA on behalf of the Vermont Low Income Advocacy Council, Inc. (VLIAC) to the Boston office of the United States Department of Labor for

> All records, reports or documents prepared by Department of Labor "monitors" in connection with on-site evaluations of all Vermont apple growers' efforts to recruit domestic labor to pick the 1975 apple harvest [prepared at any time during the period May-July 1975].

This request was in furtherance of VLIAC's efforts to persuade the Department against certification of foreign labor to pick the Vermont apple harvest. VLIAC apparently first learned of the existence of the documents requested in August 1975 and was seeking them in connection with its efforts to prevent the use of foreign labor for the 1975 autumn harvest. This apple harvest in Vermont, we are told, is generally concluded by the third or fourth week of September.

The Boston office of the Labor Department denied VLIAC's request by a letter of September 8—within the 10-day response period of the FOIA, 5 U.S.C. § 552(a)(6)(A)(i). It cited the "intra-agency memoranda" exemption, see 5 U.S.C. § 552(b)(5); 29 C.F.R. § 70.25. By letter of September 16, VLIAC appealed this denial to the Solicitor of Labor in Washington, D.C., disputing the applicability of the exemption on the basis of the content of the material requested. On October 2, the Solicitor's office wrote to VLIAC acknowledging receipt of the appeal on September 24 and advising that a reply would be sent by October 22; the letter also referred to the necessity of obtaining the records from the regional office prior to disposition of the appeal. The Solicitor's office requested the records by telephone from the regional of-

---

1. This provision, added by P.L. 93-502, 88 Stat. 1561-64 (1974), reads:

   The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

fice on October 3; apparently something was forwarded immediately to the Washington office but was lost in transit.

The Department did not communicate further with VLIAC within the 20-day period for determining appeals under the FOIA, 5 U.S.C. § 552(a)(6)(A)(ii). By letter of October 30, VLIAC informed the Solicitor's office that it intended to file suit to obtain the requested records unless they were received by November 5. The letter was received by Ms. Petters, Administrative Counsel for Legal Services in the office of the Solicitor of Labor, on November 5. In response, Ms. Petters sent a telegram to counsel for VLIAC on November 6. This said:

> RE YOUR FOIA APPEAL. FILE NOT RECEIVED IN THIS OFFICE BECAUSE NOT LOCATED. UNDERSTAND FILE IN THE MAIL TO US TODAY. PLEASE ADVISE YOUR TELEPHONE NUMBER SO THAT WE MAY CONTACT YOU TO DISCUSS.

The materials sent on November 6 to the Washington office were received on November 10; however, they related to the period September-October 1975, and thus were not those requested by VLIAC. Apparently because of the responsible official's absence from her office for conferences, including a training program to insure proper compliance with FOIA and the recently enacted Privacy Act, 5 U.S.C. § 552a, and because of her other official duties, this error was not discovered until the fourth week of November at which time it was thought that the requested material did not exist.

VLIAC did not respond to the suggestion of further discussion or the request for its telephone number in the Department's November 6 telegram although receipt of the telegram is admitted. Instead, on November 12 VLIAC filed suit in the United States District Court for the District of Vermont seeking preliminary and permanent injunctive relief against the withholding of the requested records and attorney fees and costs under § 552(a)(4)(E) of the FOIA.[2]

The correct records from the regional office were received in Washington on December 11 following a second search for the material ordered by the Solicitor's office. On December 12, an informal determination was made to grant VLIAC's appeal with the exception of certain minor deletions deemed necessary to prevent invasion of personal privacy, see 5 U.S.C. § 552(b)(6); 29 C.F.R. § 70.26. On December 16, VLIAC mailed its motion for summary judgment to the district court and this was filed the following day together with the Government's answer denying VLIAC's entitlement to relief. On or about December 16, after VLIAC had mailed its summary judgment motion, VLIAC was informed by telephone of the Department's favorable decision of its appeal; that decision later was embodied in a letter of December 22 from the Solicitor of Labor accompanying the documents which were received by VLIAC on December 30. VLIAC then withdrew its motion for summary judgment and on January 13, 1976 filed a motion seeking an award of attorney fees and costs pursuant to § 552(a)(4)(E). On February 26 the Government filed a motion asking that the suit be dismissed as moot and opposing VLIAC's motion for fees. A hearing was held on February 27.

---

**2.** 5 U.S.C. § 552(a)(6)(C) provides that an applicant is deemed to have exhausted his administrative remedies when the agency fails to act within the time limit provisions of the statute. An action for injunctive relief is authorized by § 552(a)(4)(B).

The FOIA also contains certain "time release" provisions available to the Government: under § 552(a)(6)(B) the Government in certain enumerated "unusual circumstances" may obtain up to an additional 10 days to respond either initially or with respect to an appeal by notifying the applicant of the reasons for the delay and the expected date of decision; and under § 552(a)(6)(C) the district court is authorized to provide the Government additional time upon a showing of "exceptional circumstances" and "due diligence." In this case, the Government utilized neither of these provisions, although § (i) of the first—"the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request"—seems to have been right on target.

In an opinion filed April 1, 1976, Chief Judge Holden of the District Court for Vermont dismissed the action and denied VLI-AC's motion for attorney fees and costs. His reasoning was:

In the first instance the information was withheld on what may have been an erroneous interpretation of the recent statute. On appeal the administrative decision was delayed until the correct requested material could be retrieved from the Regional office. While the delay generated the present litigation, as soon as the defendant discovered the plaintiff was lawfully entitled to a part of the records, the appropriate material was supplied. Certain material was withheld apparently with some legal justification. In any event, there is nothing this court has done to grant the plaintiff the relief prayed for in the complaint. There has been no judicial action to establish the plaintiff as the prevailing party. The plaintiff's motion for an award of attorney's fees and costs will be denied and the action dismissed.

This appeal followed.

The legislative history of § 552(a)(4)(E) is unusually complete, and we begin by setting it out.

The amendment had its origin in a 1972 report of the House Committee on Government Operations, H.Rep. No. 92–1419 (92d Cong., 2d Sess.), reprinted in Freedom of Information Act and Amendments of 1974 (94th Cong., 1st Sess., March 1975) (hereafter Leg.Hist.), p. 3. The Committee recommended:

Court costs and reasonable attorneys' fees should be awarded, in the discretion of the court, to the complainant if the court issues an injunction or order against the Government agency on a finding that the information sought was improperly withheld from the complainant.

Leg.Hist. 90. The bill as passed by the House, H.R. 12471, provided in § 1(e):

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the United States or an officer or agency thereof, as litigant, has not prevailed.

Leg.Hist. 147. The section-by-section analysis of the House Report, H.Rep. 93–876, U.S.Code Cong. & Admin.News 1974, pp. 6267, 6276, stated:

Section (1)(e) . . . allows the assessment of attorney fees and costs against the agency on behalf of a litigant. The assessment of fees and costs is at the option of the court.

Leg.Hist. 130. The Senate bill, S. 2543, changed the emphasis:

The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. In exercising its discretion under this paragraph, the court shall consider the benefit to the public, if any, deriving from the case, the commercial benefit to the complainant and the nature of his interest in the records sought, and whether the government's withholding of the records sought had a reasonable basis in law.

Leg.Hist. 202–03. The Senate Report, S.Rep. No. 93–854, explained:

The bill allows for judicial discretion to determine the reasonableness of the fees requested. Generally, if a complainant has been successful in proving that a government official has wrongfully withheld information, he has acted as a private attorney general in vindicating an important public policy. In such case it would seem tantamount to a penalty to require the wronged citizen to pay his attorneys' fee to make the government comply with the law. However, the bill specifies four criteria to be considered by the court in exercising its discretion: (1) "The benefit to the public, if any deriving from the case"; (2) "the commercial benefit to the complainant"; (3) "the nature of" the complainant's "interest in the records sought"; and (4) "whether the government's withholding of the records sought had a reasonable basis in law."

Leg.Hist. 171. The Conference Committee proposed the simpler version which was adopted. It explained in H.Rep. No. 93–1380:

> The conference substitute follows the Senate amendment, except that the statutory criteria for court award of attorney fees and litigation costs were eliminated. By eliminating these criteria, the conferees do not intend to make the award of attorney fees automatic or to preclude the courts, in exercising their discretion as to awarding such fees, to take into consideration such criteria.

Leg.Hist. 227.

■ The point most strongly urged by appellant and opposed in brief by the Government is that the district court erred in concluding that the rendition of a plaintiff's judgment was a necessary condition for the award of attorney fees and costs. While that would have been true under the original proposal made by the House Committee on Government Operations in 1972, we agree that under the bill as enacted a judgment is not an absolute prerequisite to such an award, as indeed the Government seemingly conceded at argument. To take an extreme example, Congress clearly did not mean that where an FOIA suit had gone to trial and developments made it apparent that the judge was about to rule for the plaintiff, the Government could abort any award of attorney fees by an eleventh hour tender of the information requested.

■ Our agreement with appellant on this score does not mean, however, that a reversal is mandated. Just as Congress did not mean that an award of attorney fees in a FOIA case could never be made in the absence of a judgment for the plaintiff, neither did it mean that a plaintiff was entitled to an award of such fees whenever a suit was brought and the requested information (or the bulk of it) was thereafter furnished. The Conference Report stated,

in complete accord with the House and Senate Reports, that "the conferees do not intend to make the award of attorney fees automatic," and that such an award lies in the court's sound discretion. The detailed list of criteria governing a court's discretion which the Senate bill had contained was eliminated not because the conferees disagreed with it but because they regarded it as "too delimiting" and "unnecessary." Leg.Hist. 227. This case illustrates the wisdom of their action.

■ In order to obtain an award of attorney fees in an FOIA action, a plaintiff must show at minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the delivery of the information. Neither condition was fulfilled here.

■ Concededly the specified time periods had run when VLIAC filed its complaint on November 12, 1975. But, as every lawyer should know, the fact that a party is legally entitled to invoke the aid of the courts does not demonstrate that a rush to the courthouse door is always reasonable. Six days before VLIAC filed its complaint, Ms. Petters dispatched the telegram which we have quoted above, and VLIAC received this the following day. The telegram revealed a situation, not unusual in government or other large organizations, that had rendered it impossible for the Solicitor to make good on his promise to decide the appeal by October 22, namely, that the file had not been located. Ms. Petters made the seemingly reasonable request that VLIAC let her know its telephone number "so that we may contact you to discuss." The obvious purpose of this request was to attempt to work out a new timetable for decision of the appeal in light of the unexpected and excusable difficulty the Solicitor had encountered in obtaining the records essential to making a decision.[3] Counsel for VLIAC

---

**3.** Compare Leg.Hist. 126, reproducing the 1974 House Report which stated, although in reference to time limit problems in retrieval of

records from "remote location[s] outside the country," that

> In such unusual cases, the committee expects that the requestor will accept the good faith

told the district court he was "flabbergasted" by the request for the telephone number since it intimated that "the Government was incapable of finding that out themselves via Information" or through the Boston office which had the telephone number.[4] Doubtless Ms. Petters could have found VLIAC's telephone number in one or the other of these ways but we see no sufficient excuse for counsel's failure to make the minimal response she suggested—not to speak of the still better and altogether natural course of picking up the telephone and making a collect call which would have afforded counsel an opportunity for the catharsis he evidently considered necessary as well as for more constructive endeavors. VLIAC was not operating under any time constraints. The date when the requested information could have been put to use in connection with the 1975 apple harvest had long since expired; on the other hand a delay of a few weeks in bringing suit involved no significant danger that the information would not be available in time to make representations concerning the harvest in the fall of 1976. While counsel for VLIAC was legally entitled to indulge his feelings with respect to Ms. Petters' request, we see no reason for rewarding VLIAC with moneys from the public treasury for his adding what turned out to be a needless suit to the heavy docket of the District Court for Vermont.[5] Doubtless it

would have been better if, despite VLIAC's refusal to respond to the telegram of November 6 and the filing of suit on November 12, the Department had made some progress reports to VLIAC that might have avoided the expense of the latter's preparing a motion for summary judgment. Still it was VLIAC that had decided to make a "federal case" out of a matter that, as the November 6 telegram indicated, had promise of amicable resolution.[6]

Furthermore, the district court was justified in concluding that the suit was not the cause of the delivery of the information. The report of the Conference Committee demonstrates that Congress did not wish to impose a rule of *post hoc, ergo propter hoc.* Once the proper files were obtained, the Solicitor promptly pursued his review of them and quickly decided to release the bulk of them after appropriate deletions,[7] pursuant to the Department's general policy of releasing any documents if the authorized officer

> determines that, notwithstanding the applicability or possible applicability of an exemption from disclosure, the requested inspection or copying furthers the public interest and does not impede the discharge of any of the functions of the Labor Department.

29 C.F.R. § 70.11(b).[8] Our review of the affidavits with respect to the proceedings in

---

> assurances of the agency that the information requested will be retrieved and the request itself acted upon in the most expeditious manner possible.

4. At the argument before us VLIAC's counsel repeated that he was "a bit put off" on the latter account.

5. Counsel for VLIAC conceded at argument that if he had known all the facts set forth in the affidavits of the Labor Department officials concerning their difficulties in obtaining records and the efforts being made to surmount them, he would not have gone to court. He would have had this knowledge if he had responded to Ms. Petters' request.

6. We do not think that the Government's failure to employ the "time release" provisions, see fn. 2, adds anything to VLIAC's position. Such a failure merely allows the litigation to commence and continue in its normal course;

it does not bar the Government from opposing or a court from rejecting an application for an award on the basis of the unreasonableness of the applicant's going to court.

7. The correct records were not received in Washington until December 11, 1975. Informal decision to allow the appeal was made on December 12, and the records were sent to VLIAC ten days later after the Department made certain deletions which plaintiff concedes to be proper.

8. In the light of this policy, the fallacy in appellant's argument that release of the documents demonstrates the absence of "a reasonable basis in law" for the withholding of the documents—the language of the Senate bill—becomes apparent. Indeed, although we do not decide this point, it is not at all clear to us that the documents might not have been within the exemption, § 552(b)(5), for intra-agency memo-

the Department of Labor convinces us, as it did the district judge, that the result here was not one whit different than if VLIAC had withheld legal action and shown some understanding of the problem created for the Solicitor by the failure of the regional office to locate the documents. The record here is instinct with a sincere desire by the Solicitor to give VLIAC all that FOIA required, and indeed more, which was handicapped in execution, regrettably but without adverse effect, by the regional office's temporary failure to locate the records and the press of work. The case differs *toto caelo* from *Goldstein v. Levi*, 415 F.Supp. 303 (D.D.C.1975), where efforts over two years at the administrative level had been unsuccessful, with an appeal twice denied, but the documents were then produced within ten weeks after suit was brought. Just as the district court in that case properly distinguished the decision here under review, it is proper for us to distinguish *Goldstein*.[9]

Affirmed.

randa. See *Title Guarantee Co. v. NLRB*, 534 F.2d 484, 492–93 n. 15 (2 Cir. 1976).

9. VLIAC relies heavily on several district court opinions granting fee awards in FOIA cases in the absence of court-ordered relief. As indicated, we agree that such an order is not a prerequisite to an award. See *Kaye v. Burns*, 411 F.Supp. 897 (S.D.N.Y.1976). Several of these decisions noted the relevance of the necessity for the litigation or the causal relation between the suit and the agency's compliance with the plaintiff's request. See *Consumer's Union of United States, Inc. v. Board of Governors*, 410 F.Supp. 63, 74 (D.D.C.1975); *Ruiz v. Bedell*, Civil No. 75–0465, at 2 & n. * (D.D.C., Sept. 8, 1975); *American Federation of Government Employees v. Rosen*, 418 F.Supp. 205, 208 (N.D.Ill.1976); *Emery v. Laise*, Civil No. 76–516, at 4 (D.D.C., June 3, 1976). But see *Communist Party of the United States v. Department of Justice*, Civil No. 75–1770, at 4 (D.D.C., March 23, 1976).

In view of our disposition, appellant's citation to *Campbell v. United States Civil Service*

*Comm'n*, 539 F.2d 58 (10 Cir. 1976), is unavailing. The district court there partly granted the FOIA complainant's request and enforcement of the order was stayed pending appeal. Following a decision in another circuit holding documents similar to some of those requested not to be exempt, the agency publicized part of the requested material, including all that had been ordered released by the district court. In the appeal, the Tenth Circuit held the remaining documents in dispute exempt but it remanded to the district court for consideration of an increase in the lower court's initial $250 fee award. Nothing suggests, however, that the applicant's resort to the courts was unreasonable and we do not disagree with the implication in *Campbell* that an FOIA litigant who has won a court order directing production of records over agency assertions of exemptions should not be denied fees simply because the agency discloses the material on the basis of a decision in another circuit during the pendency of the appeal and while the district court order is stayed.