Michael Alan CROOKER,
Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF
JUSTICE, Defendant–Appellee.

No. 80–1109.

United States Court of Appeals,
First Circuit.

Submitted April 10, 1980.

Decided Oct. 10, 1980.

Michael Alan Crooker, pro se.

Edward F. Harrington, U.S. Atty., Boston, Mass., and Charles K. Mone, Asst. U.S. Atty., Boston, Mass., on brief for defendant–appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

The only issue presented by this appeal is whether the appellant is entitled to an award of attorney fees under the Freedom of Information Act (FOIA). 5 U.S.C. § 552(a)(4)(E). The facts are essentially undisputed. On April 19, 1979, the appellant, Michael A. Crooker, made a written request to the Department of Justice for a copy of any "charging manuals, rules and guidelines used by the Office of the United States Attorney for the District of Massachusetts and/or the manner in which prosecutorial discretion will be exercised." Complaint at para. 5. Upon receipt, the Department of Justice forwarded the request to the Office of the United States Attorney for the District of Massachusetts, who allegedly received it on May 11, 1979. After receiving no response and considering his request denied, plaintiff filed suit under FOIA on May 22, 1979.[1] Nearly simultaneously, the United States Attorney's office advised appellant on May 21, 1979 that it had no documents of the type requested. Appellant, unsatisfied with the government's response, notified the United States Attorney's office on June 12, 1979 that "he had brought suit to compel disclosure and that he did not believe the May 21, 1979 response." The United States Attorney's office referred this second letter to the Department of Justice. On July 5, 1979 the Department released to the appellant a forty–two page document entitled "Material Relating to Prosecutorial Discretion." Appellant, still unsatisfied with the government's efforts, on October 2, 1979 refiled an earlier motion[2] which requested that the Government be ordered "to file affidavits and an index of all such materials as suggested in Vaughn v. Rosen, 484 F.2d 820, 826–28 (D.C.Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)." The court ordered a response which the Government, on November 7, 1979, complied with by stating that no such "index" was necessary insofar as one document had already been disclosed and because a second document had been forwarded to the Department of Justice for review. On January 3, 1980, a second document of eight pages[3] was released. At this point, the appellant, satisfied that his request had been fulfilled, asked that the case be dismissed and that he be awarded attorney fees in the amount of $165.00. The case was dismissed, but the request for fees was denied upon two grounds: that the appellant had litigated pro se; and that the present case was controlled by Vermont Low Income Advocacy Council, Inc. v. Usery, 546 F.2d 509 (2d Cir. 1976).[4] This appeal followed.

5 U.S.C. § 552(a)(4)(E) provides:

---

1. This action was originally filed in the District of Connecticut. It was transferred to the District of Massachusetts on July 6, 1979.

2. This was appellant's second request for a "Vaughn v. Rosen type index." An earlier request of this type was denied as premature. The record also discloses that in the interim between the initial request and the final disclosure, appellant also moved for summary judgment on at least one occasion.

3. No title was given to this second document. Apparently, it is a document used only by prosecution officials for the District of Massachusetts. Neither document is part of the record before us.

4. This order reads:

The Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

Although, in general terms, the award of attorney fees is left to the discretion of the district court, and FOIA is no exception, we are in the present case concerned that the district court's exercise of discretion may have been misguided. Putting aside for one moment the question of appellant's *pro se* status, both the district court, in its ruling below, and the Government, in its argument on appeal, place exclusive reliance on *Vermont Low Income Advocacy Council, Inc. v. Usery, supra* (hereinafter *VLIAC*). Even were we to accept the rule of law enunciated by *VLIAC*, there are enough factual differences between that case and the present case to question whether it should have compelled the district court's ruling.

In *VLIAC*, the complainant filed an FOIA request for certain documents from the Boston Office of the Department of Labor. Under an invocation of certain FOIA exemptions, the request was denied "within the 10 day response period of the FOIA, 5 U.S.C. § 552(a)(6)(A)(i)." *Id.* at 510. This denial was appealed to the Solicitor of Labor in Washington, D.C., who did not respond within the twenty–day period for determining appeals. 5 U.S.C. § 552(a)(6)(A)(i). The complainant then advised the Department of Labor that it intended to file suit unless the requested documents were received by a certain date. The Department immediately replied by telegram that it had not been able to locate the file, as it had not yet been received in the mail. The Department also requested the complainant's telephone number so that the matter could be discussed. However, the complainant did not accept the Department's invitation but, instead, upon the expiration of the time period it had set, proceeded to file suit. While suit was pending, the Department of Labor received the records and decided to produce the documents. On this set of facts, the court in *VLIAC* stated:

> In order to obtain an award of attorney fees in an FOIA action, a plaintiff must show at a minimum that the prosecution of the action could reasonably have been regarded as necessary and that the action had substantial causative effect on the delivery of information.

546 F.2d at 513. Because the evidence indicated that the Department of Labor would have produced the documents irrespective of the suit, the court ruled that the complainant had not "substantially prevailed" on his claim so as to warrant an award of attorney fees.

The facts in the present case may not be susceptible to the same treatment. First, the initial response in the present case was altogether different. Unlike in *VLIAC*, the requesting party here did not receive a timely response from the agency as required by statute. 5 U.S.C. § 552(a)(6)(A). At the time he filed suit, the appellant could legally have assumed that his request had been denied, with no further exhaustion required. 5 U.S.C. § 552(a)(6)(C). Although we note that there was no legal impediment to the filing of suit, this does not necessarily mean that such a suit was either necessary or that it had any causative effect. The Government, without affidavit or other probative evidence, hangs its argument on its statements that the agencies involved are not "structured in such a manner as to be able to instantly locate and retrieve all memoranda written on a particular subject" and that "in an imperfect bureaucracy our retrieval system is less efficient than it should be." Government Memorandum of Law at 5. But when the government did respond to appellant's request, it was not to assure him that his

Upon consideration of motion and Government's response, motion granted and ordered that case be dismissed.

Regarding motion for award of attorney's fees, motion denied because plaintiff appeared pro se, and because the reasoning in *Vermont Low Income Advocacy Council v. Usery*, 2 Cir. 1976, 546 F.2d 509, is, in our opinion applicable and controlling.

request was being attended to, *see Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976), or to invoke any time extension provision, 5 U.S.C. § 552(a)(6)(B), but to inform him that the requested documents did not exist.

Second, it is not altogether clear that appellant's June 12 letter would, by itself, have produced the disclosure. On one hand, the first document was in fact released shortly thereafter. Viewed from this angle, the letter may have simply alerted the government to an earlier error and initiated a second good faith effort to locate and produce the documents. On the other hand, this second letter was not technically a request, but a notification that suit had been filed. It seems plausible that the second effort to locate and produce the records was triggered by the mention of suit in this letter. While, understandably, the Government claims that the former interpretation is true, our problem is that, aside from the Government's statement to this effect in its memorandum of law, there is nothing in the record to document this conclusion; nor did the district court make a specific finding to this effect.[5]

Moreover, we have trouble overlooking the fact that the second letter appears to have produced only partial compliance. The record clearly negates the inference that what was involved was a piecemeal request that necessitated piecemeal compliance. *See Goland v. Central Intelligence Agency*, 607 F.2d 339, 355 (D.C.Cir.1978). Although we do not have the documents before us, it has nowhere been advanced that the second document was unimportant or not relevant to the request. Indeed, if we look at what was actually sought, *supra* at 1, it would seem that the second document was of more importance than the first.

Lastly, the Government has not explained, nor do we understand, why the appellant's request was such an especially difficult one for either of the agencies involved as to require nearly nine months to satisfy.[6] We note that requests of this same genre have been made in the past to this agency, *Jordan v. United States Department of Justice*, 591 F.2d 753 (D.C.Cir. 1978) (in banc), in what appear to be more than isolated situations. *See* The Nat'l L. J., "Justice Department to Release District Prosecution Guides," June 9, 1980, at 5. We note that, as presented, the request was not so broad or vague as to leave the agency in doubt as to what exactly was sought. *See Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir.), *cert. denied*, 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157, *rehearing denied*, 434 U.S. 935, 98 S.Ct. 424, 54 L.Ed.2d 295 (1977).

■ In light of all these factors, our review does not reveal any promise of "amicable resolution" of the dispute, such as was present in *VLIAC*, 546 F.2d at 514, or that the resulting disclosure would have been "not one whit different" if the appellant had withheld his legal action, 546 F.2d at 515. By the same token, we are not prepared to say that the institution of a lawsuit was determinative. What our reading of the record does show is that, faced with a colorable claim of cause–and–effect, the Government has not demonstrated that the complainant's success in obtaining the requested documents was due more to its responsible compliance with the provisions of the Act than to the complainant's pending suit. Unless it can do so in a concrete manner, a court would have to conclude that the complainant had "substantially prevailed" within the meaning of the Act.

---

5. This is not to suggest that district courts in ruling upon a request for attorney fees in FOIA actions must always hold evidentiary hearings to decide whether a suit was necessary or not. *But see Sargeant v. Sharp*, 579 F.2d 645 (1st Cir. 1978) (holding that the determination of attorney fees in that particular instance required such a hearing). However, it would seem that the agency involved is generally in a much better position to indicate to the court by some probative evidence that the result would have been the same regardless of a suit. *Marschner v. Department of State*, 470 F.Supp. 196, 200 (D.Conn.1979).

6. It is significant that the delay incurred cannot be attributed to a dispute over the applicability of any exemption in FOIA.

█ The second predicate on which the district court based its denial of an award of attorney fees was that the appellant had litigated the case *pro se.* "Of course, the general rule in federal courts is that a litigant cannot recover his counsel fees." *Roadway Express, Inc. v. Piper,* —— U.S. ——, ——, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). In general terms, the expense of an attorney in maintaining an action or establishing a defense, the "costs as between solicitor and client," *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 165, 59 S.Ct. 777, 779, 83 L.Ed. 1184 (1939), may be reimbursed only for the following three reasons: one, to compensate a prevailing party who has vindicated and advanced a stated national policy, and authority for the award is specifically manifested by statute, *see Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 260 n.33, 95 S.Ct. 1612, 1623, 44 L.Ed.2d 141 (1975) (listing federal statutes allowing such ·fees). *See also Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); two, to prevent unjust enrichment by persons who benefit from litigation but do not contribute to its expense, *see Boeing Co. v. Van Genert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (and cases cited therein); and three, to punish a party who had litigated in bad faith or abused judicial processes. *See Roadway Express, Inc. v. Piper, supra.*

5 U.S.C. § 552(a)(4)(E) falls into the first category of recognized exceptions. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, supra,* n.33. We therefore turn toward an examination of its purpose within the overall FOIA context to determine whether it encompasses an award of attorney fees where no attorney was involved.

Recently, the Supreme Court outlined the purpose of FOIA in *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.,* 445 U.S. 375, 385, 100 S.Ct. 1194, 1199, 63 L.Ed.2d 467 (1980):

The Freedom of Information Act was intended "to establish a general philosophy of full agency disclosure," . ·. and to close the "loopholes which allow agencies to deny legitimate information to the public. . . ." The attention of Congress was primarily focused on the efforts of officials to prevent release of information in order to hide mistakes or irregularities committed by the agency ... and on needless denials of information.

(citations to legislative history omitted). The legislative history of FOIA makes clear that the 1974 attorney fees and costs amendment to the Act, subsection 552(a)(4)(E), was meant to further and facilitate this stated purpose. H.R.Rep.No. 876, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, 6267, 6272. The amendment was "not enacted to provide a reward for any litigant who successfully force[d] the government to disclose information it wish[ed] to withhold," *Nationwide Bldg. Maintenance, Inc. v. Sampson,* 559 F.2d 704, 711 (D.C.Cir.1977), or to penalize government agencies who were forced to disclose.

It had a more limited purpose—to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.

*Id.* at 711. By eliminating the obstacle of attorney fees, it ensures that all litigants have "access to the courts to vindicate their statutory rights." *Id.* at 715. *See also Blue v. Bureau of Prisons,* 570 F.2d 529, 532–34 (5th Cir. 1978); *Exner v. FBI,* 443 F.Supp. 1349 (S.D.Cal.1978).

After examining the concept of attorney fees, both in general and within the FOIA context, we find little, if any, of FOIA's purpose achieved by permitting a litigant to recover for a non–performed service or to be reimbursed for an expense not incurred. Rather, in actions where the complainant represents himself, sometimes as a hindrance instead of an aid to the judicial process, an award of attorney fees does nothing more than subsidize the litigant for his own time and personal effort. *White v. Arlen Realty & Dev. Corp.,* 614 F.2d 387

(4th Cir. 1980). Even FOIA litigants who do secure the assistance of counsel expend time and energy on their own behalf. Thus, an award of attorney fees in a situation where no services are received is more of a windfall than an incentive to pursue any disclosure rights. *Cf. Davis v. Parratt*, 608 F.2d 717 (8th Cir. 1979); *Hannon v. Security Nat'l Bank*, 537 F.2d 327 (9th Cir. 1976).

The impropriety of allowing the layperson litigant an attorney fee award is further underscored by the lack of any meaningful standard for calculating the amount of such an award. In *King v. Greenblatt*, 560 F.2d 1024 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), we approved and adopted twelve factors to be considered in determining a reasonable attorney fee award. All twelve factors are specifically geared toward examining the work of an attorney. In *Lamphere v. Brown Univ.*, 610 F.2d 46, 48 (1st Cir. 1979), we denied that part of an award of attorney fees which included payment to paralegals and law students not in the regular employ of the law firm who represented the plaintiff in excess of what they actually received. We noted that determining the rate of payment "could be a very complicated, difficult, and perhaps dangerous principle, however fair it may be in the present case."

We are not unmindful that *pro se* litigation does sometimes advance the policy aims of FOIA. We are also aware that several courts have found that attorney fees may be awarded in such cases. *See Cox v. United States Dep't of Justice*, 601 F.2d 1, 5–6 (D.C.Cir.1979); *Marschner v. Department of State*, 470 F.Supp. 196, 201 (D.Conn.1979); *Jones v. United States Secret Serv.*, 81 F.R.D. 700, 702 (D.D.C.1979); *Holly v. Acree*, 72 F.R.D. 115, 116 (D.D.C. 1976), *aff'd without opinion sub nom. Holley v. Chasen*, 569 F.2d 160 (D.C.Cir.1977). *See also Cuneo v. Rumsfeld*, 553 F.2d 1360, 1367–68 (D.C.Cir.1977) (attorney appearing in *propia persona* allowed to recover attorney fees). However, we disagree that this statutory provision compels such a reading or that the interests of the Act are best served by it.[7] As previously stated, section 552(a)(4)(E) is neither a punishment nor a reward. Thus, any award which provides compensation in excess of actual costs incurred in prosecuting a suit vindicating a specific right not only goes against "the existing body of law on the award of attorney fees recognize[d]" at the time this provision was adopted, Conf.Rep.No. 1200, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, 6285, 6288, but goes far beyond that which is needed to provide an incentive to FOIA plaintiffs who are otherwise dissuaded by insufficient resources. In the case of this type of litigant, any financial barriers which may exist are sufficiently overcome by awarding those "litigation costs actually incurred." 5

---

7. We are also unpersuaded by those cases which grammatically analyze the repetition of the word "reasonable" within this subsection to conclude that attorney fees need not be incurred in order to be eligible for this award. *See Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C.Cir.1977); *Holly v. Acree*, 72 F.R.D. 115, 116 (D.D.C.1976), *aff'd without opinion sub nom. Holley v. Chasen*, 569 F.2d 160 (D.C.Cir. 1977). To the contrary, we think it quite clear that a lawyer's charge for his services might be reasonable while at the same time a client's retention of that lawyer or direction that he perform particular services in a specific case was unreasonable. Thus, we see the more natural reading of the subsection as requiring that attorney fees, like "other litigation costs," be actually incurred in order to be compensable. Moreover, as discussed above, a reading of § 552(a)(4)(E) allowing a *pro se* litigant only

costs actually incurred is fully consistent with the aims of the Act. Indeed, it seems that the only federal cases allowing a nonlawyer *pro se* litigant reimbursement for attorney fees have been FOIA cases. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). It is one thing to hold that the *pro se* litigant may advance the policy aims of the Act. "But it is a second and larger step to hold that where, as here, Congress has allowed attorney's fees, it meant to compensate non attorneys who represent themselves." *Hannon v. Security Nat'l Bank*, 537 F.2d 327, 328 (9th Cir. 1976). Indeed, even where we have held that attorney fees may be granted to litigants represented by public interest firms or legal services, we have done so on the understanding that a legal representative did in fact incur time and effort in litigating the cause. *See Palmigiano v. Garrahy*, 616 F.2d 598 (1st Cir. 1980).

U.S.C. § 552(a)(4)(E); *see Burke v. Dep't of Justice*, 432 F.Supp. 251, 253 (D.Kan.1976); *aff'd*, 559 F.2d 1182 (10th Cir. 1977); *cf. Davis v. Parratt*, 608 F.2d at 718. By awarding the *pro se* litigant costs, his access to the courts is ensured in a manner that makes him whole without providing any windfall compensation at the expense of the public fisc.

In ruling upon any request under section 552(a)(4)(E), a district court should first determine whether a party has in fact "substantially prevailed." This determination must be guided by the particular circumstances of each case; to substantially prevail, there must be a showing both that the suit was necessary and that it had a causative effect on the disclosure of the requested information. *VLIAC*, 546 F.2d at 513. When such allegations have been made, the government, in opposing the request, must do more than merely deny them. Second, if the court determines that a complainant has "substantially prevailed," it must consider whether the suit was of the type that advanced the policy considerations of the Act, which include: "the benefit to the public deriving from the case, the commercial benefit to the complainant and the nature of his interest in the Federal records sought, and whether the Government's withholding of the records sought had a 'reasonable basis in law.'" *See* Conf. Rep.No. 1200, *supra. See also Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712–13 (D.C.Cir.1977). If it is satisfied that these and any other relevant factors are met, the court will then consider the amount of the award, whether it be attorney fees, costs or both.

Since no claim for costs has been made in this case, the judgment below is affirmed on the grounds that *pro se* attorney fees are not authorized by 5 U.S.C. § 552(a)(4)(E).

*Affirmed.*