The STATE of Wyoming, ex rel. David J. SCHOLL, Appellant (Relator),

v.

Rudolph ANSELMI, R. A. Hakala, and Doran Lummis, as individuals and as The Wyoming Tax Commission, and Daniel C. Leach, Jr., as an individual and as Director, Motor Vehicle Division, Department of Revenue and Taxation, State of Wyoming, Appellees (Respondents).

No. 5564.

Supreme Court of Wyoming.

Feb. 11, 1982.

David J. Scholl, appellant, pro se.

Steven F. Freudenthal, Atty. Gen., Ron Arnold and Randall T. Cox, Asst. Attys. Gen., Cheyenne, for appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

This appeal is from that portion of a judgment and order of the district court dated June 24, 1981, denying appellant damages and attorney fees.

We will affirm.

Appellant specifies the issues: [1]

"1. Is the rule requiring signing of the *'Information Practice Statement'* on appellees [sic] form *'MVDL–705 (2–80)'* authorized, implicitly or explicitly, by Wyoming Statutes?

"2. If authorized by statutes, is the requirement that such a statement must be signed in order to obtain a Wyoming Driver's License a 'rule' under the definition of the Wyoming Administrative Procedure Act? If so, may the rule be imposed without adoption in accordance with the Wyoming Administrative Procedure Act?

"3. If authorized and properly adopted as a rule, is the 'Information Practice Statement' an unconstitutionally overbroad waiver of rights to privacy and confidentiality?

"4. Is appellant entitled only to court costs? Or his [sic] he entitled to his costs seeking administrative remedy, his costs in preparing and bringing the action, and compensation for damages incurred due to Appellees [sic] actions and failures to act, including punitive damages?"

Appellant David J. Scholl applied for renewal of his Wyoming driver's license on or about December 13, 1978. The local Motor Vehicle Division officer requested that appellant complete the standard license application form, but appellant refused to supply his social security number. The officer refused to issue appellant a driver's license because the form was not complete; however, appellant successfully completed all other requirements for issuance of a driver's license, including the examination.

Appellant also protested the requirement that license applicants must sign an "Information Practices Statement," which is part of the application for driver's license form MVDL (11–77). (See Appendix.) Appellant signed the Information Practices Statement on the date of his application, but added the legend, "I do not waive any Constitutional rights."

Appellant communicated to the Motor Vehicle Division and to the members of the Wyoming Department of Revenue and Taxation his reasons for refusing to disclose his social security number, which reasons are religious. The Motor Vehicle Division Director and the Wyoming Department of Revenue and Taxation upheld the action of the field officer in refusing to renew appellant's driver's license.

Appellant then applied to the district court for a writ of mandamus to compel the Motor Vehicle Division to issue a license to him without disclosure of the social security number. He also argued in the petition that signing of the Information Practices Statement by license applicants is not authorized by law and constitutes an invasion of constitutionally protected rights of privacy. The Motor Vehicle Division agreed to issue a license to appellant pending resolution of the matter in district court. The district court issued an order on July 11, 1980, permitting appellant to operate a motor vehicle pending the final determination

---

1. Appellees characterize the issues slightly differently:

"1. Whether, under the facts as stated, the Appellant may obtain an award of damages, despite his complete failure to offer evidence of damages to the District Court.

"2. Whether any rights protected by the U.S. Constitution and federal statutes were diminished by the Appellees' acts regarding Appellant.

"3. Whether sovereign and official immunity bar a recovery of damages by Appellant in light of his non-compliance with the Wyoming Governmental Claims Act and statutes of limitations.

"4. Whether the District Court erred in denying mandamus relief with respect to the information practices of Appellees.

"5. Whether the District Court erred in denying Appellant attorney fees."

of the matter on the merits. Appellant did not have a valid Wyoming driver's license during the interim period from December of 1978 to July 11, 1980.

Appellant filed his Amended Petition for Writ of Mandamus on July 7, 1980, in which he asked for relief in several forms, including:

1. That the Motor Vehicle Division issue a renewed license to petitioner;

2. That the Division invalidate and remove from its files all Information Practices Statements signed by applicants for licenses, and that subsequent applicants must be informed that they are not required to sign the Information Practices Statement;

3. That the Division cease requiring applicants to supply social security numbers on license application forms;

4. That the Division reimburse Petitioner for costs of bringing the action and for damages, including $150.00 for the costs of "seeking remedy prior to this action," $3,000.00 for "reasonable attorney's fees and for legal research," $5,000.00 "to reimburse Petitioner for income lost due to time spent seeking remedy and bringing this action," $10.00 per day from the day application was made for license for "inconvenience and added costs to Petitioner caused by Respondent's failure to renew said license," and $30,000.00 "punitive damages," and that the respondents be held collectively and severally and individually for these costs and "damages."

Appellant and an assistant attorney general entered into a stipulation and submitted the matter to the district court on the stipulation and briefs without oral argument. The Stipulation was as follows:

"1. That on or about December 13, 1978 David J. Scholl did apply for renewal of his Wyoming Driver's License at the Buffalo office of the Department of Motor Vehicles.

"2. That Mr. Scholl did pass all required examinations for renewal of said license.

"3. That Mr. Scholl's driving record shows him to be in good standing and eligible for renewal of his license.

"4. That Mr. Scholl objected, and still objects, to the use of a Social Security number on the application and license, and to the signing of a waiver which authorizes the Department to obtain information from any source which the Department believes may relate to driving records.

"5. That the Department's agent refused to accept the application and issue a new license without the Social Security number and such a signed waiver.

"6. That the agent's actions were based on a rule, regulation, or memo issued by the department.

"7. That Mr. Scholl has made numerous and repeated efforts to have his license renewed, including telephone calls and letters to the Dirctor [sic] of the department, to each of the Tax Commissioners, and to the Attorney General's Office. (See copies of letters on file in the First District Court.)

"8. That as late as June 25, 1980, *no copy* of the rule, regulation, memo, or interpretation of the law which the department invoke [sic] against Mr. Scholl to compel disclosure of his Social Security number and signing of a waiver in order to renew his license was on file in the Office of the Secretary of State.

"9. That each of the defendants is aware, or should be aware, of Mr. Scholl's objections based on religious beliefs and assertion of Constitutional Rights, as well as statutory procedures.

"10. That the department continues to refuse to issue a renewed license to Mr. Scholl without use of the Social Security number and signing of the above mentioned waiver."[2]

---

2. Apparently the stipulation did not accurately reflect the Motor Vehicle Department's action with respect to the Information Practices Statement. Appellant did sign the statement on December 13, 1978; therefore, the license was not denied because of his failure to sign the statement as may have been suggested by the Stipulation. Appellees took the necessary steps to make this correction in the record on appeal.

The district court concluded in its decision letter that the Motor Vehicle Division lacked statutory or rule authority to require disclosure of social security numbers by license applicants and that the writ should be issued. The appellant and State could not agree on the form of the writ because of appellant's damage and attorney fee demand.

The district court entered its order on June 24, 1981, allowing a peremptory writ of mandamus directing respondents to issue a driver's license to appellant without his social security number on the license. It denied appellant's claim for damages, but allowed him to recover his costs. The court also found that the Motor Vehicle Division has statutory authority to require license applicants to sign the Information Practices Statement.

Appellant filed a timely notice of appeal.

## I

In his brief appellant addresses numerous issues in great detail. Appellee addresses these issues and raises other matters by way of defense, such as sovereign and official immunity, Wyoming governmental immunity, statute of limitations, filing of claims with the State Auditor, and others. In their briefs the parties discuss the requirement of social security number disclosure; however, appellant prevailed on that issue in the district court and the State has not appealed that ruling.

■ The issue raised by appellant regarding signing the Information Practices Statement is moot. Appellant signed the statement voluntarily when he applied for a license, although he noted that he was not waiving his constitutional rights. He does not claim that he was coerced. Further, he does not allege any damage resulting from signing the statement. The record does not indicate that the Motor Vehicle Division ever used this statement for improper purposes, or for any purpose. Appellant is apparently asking this Court to declare that he and other future driver's license applicants not be required to sign an Information Practices Statement. We decline to address that issue, if it is an issue, because our thoughts on that matter would only be advisory.

The consequences of an applicant's refusal to sign the Information Practices Statement have never been at issue in these proceedings. We believe that the only issue properly raised by appellant is the refusal of the district court to allow appellant damages and attorney fees.

## II

Appellant alleges that he was damaged because appellees violated many of his United States constitutional rights. He cited specific constitutional provisions in his Petition for Writ of Mandamus. He did not mention 42 U.S.C.A. § 1988 (1981) in his Petition for Writ of Mandamus, but does in his brief to this Court, attempting now to invoke that section as authority for his claim to damages. He also claimed that Wyoming constitutional and statutory rights were violated by appellees, and again directed the court's attention to specific constitutional and statutory provisions.

We need not address the propriety of appellant's action for damages. We will assume for purposes of this opinion that in a proper case damages could be awarded, but this case should be decided on the narrow issue of proof of damages.

Appellant requested that this case be submitted to the district court on stipulated facts and briefs. Damages are not mentioned in the stipulation, and nothing is said about damages unless telephone calls made by appellant and letters written suggest some expense. However, the Stipulation did not indicate a dollar expense, nor did it say that he incurred any expense. Appellant did allege expenses and indicate a dollar figure in his Petition for a Writ of Mandamus, but that is pleading, not evidence. There was no testimony taken in this case and the only evidence before the district court was the parties' stipulation.

■ Appellant has entirely overlooked the necessity of proving damages. He ap-

parently equates pleading damages with the proof of damages. We know of no cases nor statutes that permit damages based solely on an allegation of damages. Damages cannot be presumed. One who claims damages has the burden of proving them.[3] Consequently, absent proof, a claim for damages fails. *Quinlan v. Jones*, 27 Wyo. 410, 198 P. 352 (1921). See also West's digest, § 163(1)(3) "Damages" for scores of cases supporting this fundamental principle:

> " * * * Generally speaking, the party who would lose if no evidence were presented as to an issue regarding damages is charged with the burden of proving that issue. As a rule, the burden of proof is upon the plaintiff to show the fact and extent of the injury and to show the amount and value of his damages, whether the action is for a breach of contract or for tort. In a damages action, where issue is taken the plaintiff must show not only that he suffered damage because of the wrongful act complained of, but also that it would not have been incurred except for the wrongful act of the defendant, if he would recover more than nominal damages. * * *" 22 Am.Jur. Damages § 296, p. 392 (1965).

■ Appellant's claim for damages must fail in the absence of any proof.

### III

Appellant appeared pro se at all stages of this case. He nevertheless claims attorney fees in connection with the proceedings in the district court and on appeal. A flaw in appellant's theory is that he has not only failed to prove attorney fees, but does not even claim that he incurred such fees. Although he claims attorney fees, appellant is really claiming the value of his time in connection with this case. He does not indicate how much time he spent. Supplying that deficiency, however, would not enhance his cause.

The rule regarding attorney fees generally is set out in *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975):

> "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser. We are asked to fashion a far-reaching exception to this 'American rule'; but having considered its origin and development, we are convinced that it would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in the manner and to the extent urged by respondents and approved by the Court of Appeals."

See also *Downing v. Stiles*, Wyo., 635 P.2d 808, 817 (1981).

Apparently appellant seeks to recover "attorney fees" for his suit, under 42 U.S. C.A. § 1988, supra, which provides in part:

> " * * * In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

■ The purpose of statutory provisions for attorney fees is to encourage those who otherwise could not afford legal counsel to hire professional assistance, rather than forego their "day in court." Appellant was not discouraged by a perceived lack of financial resources; he had his day in court by bringing the action pro se. The purpose of encouraging employment of counsel could not possibly be advanced by awarding the appellant fees for professional services in this case. The Civil Rights Attorney's Fees Act does not justify a payment when it is not needed as an incentive for legal services.

The question of whether a litigant appearing pro se is entitled to attorney fees

---

**3.** There may be some exceptions to this abstract rule such as nominal damages, liquidated damages, damages provided for by statute, etc. However, appellant has not brought to our attention applicable exceptions, nor does he claim any exceptions from the general law. We have searched for an exception that might be applicable here, but know of none.

under 42 U.S.C.A. § 1988, supra, was addressed by the Eighth Circuit in *Davis v. Parratt*, 608 F.2d 717 (8th Cir. 1979). The court noted that the legislative history of 42 U.S.C.A. § 1988, supra, reveals that its purpose is not to compensate pro se litigants, but to provide for counsel fees in order to give private citizens a meaningful opportunity to vindicate their rights:

"In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, ... [they] must have the opportunity to recover what it costs them to vindicate these rights in court.

"S.Rep.No.49–1011, 94th Cong., 2d Sess. 2, reprinted in [1976] U.S.Code Cong. & Ad.News, pp. 5908, 5910. See *Morrow v. Dillard*, 580 F.2d 1284, 1299 (5th Cir. 1978); *Sargeant v. Sharp*, 579 F.2d 645, 648–49 (1st Cir. 1978); see also *Pickett v. Milam*, 579 F.2d 1118, 1121 (8th Cir. 1978); *Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 870–71 (8th Cir. 1977). This section presupposes a relationship of attorney and client that is lacking in the instant case. The district court properly denied Davis' application for attorney fees." *Davis v. Parratt*, supra, at 718.

In *Lovell v. Snow*, 637 F.2d 170, 171 (1st Cir. 1981), the court said:

"We have recently held that attorney fees may not be awarded to pro se plaintiffs pursuant to the attorney fee provisions of the Freedom of Information Act (FOIA), 5 U.S.C. Section 552(a)(4)(E). *Crooker v. United States Department of Justice*, 632 F.2d 916, 920–22 (1st Cir. 1980). Our starting point there, as here, was the intent of Congress. We identified the dominant purpose of the FOIA's attorney fee provision as the removal of 'the obstacle of attorney fees [so that] all litigants have " 'access to the courts to vindicate their statutory rights.' " [Citation omitted.] Precisely the same policy lay behind the enactment of the Civil Right Attorney's Fee Awards Act, 42 U.S.C. § 1988. [Citations omitted.] In light of this identity of statutory policies, the reasoning which we set forth in *Crooker, supra,* 632 F.2d at 920–22, fully applies in the case of a pro se plaintiff's request for attorney fees pursuant to 42 U.S.C. Section 1988. It need not be repeated here."

See also *Owens-El v. Robinson*, 498 F.Supp. 877 (W.D.Pa.1980); and *Rheuark v. Shaw*, 477 F.Supp. 897 (N.D.Tex.1979), cert. denied 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 364 (1981). Both deny attorney fees because the litigants appeared pro se.

The appellant in this case has not retained counsel. He has incurred no actual expense for professional services, and an award of "fees" for professional services to appellant would constitute a windfall. The district court did not award attorney fees, and appellant has shown no reasonable grounds to reverse the district court.

Affirmed.

## APPENDIX

### "INFORMATION PRACTICES STATEMENT

### "DRIVER'S LICENSE RECORDS

"1. Authority for collection of the information is the Driver's License Act, Sections 31–276.1 through 31–276.37 W.S. 1957 as amended.

"2. The principal purposes for which this information is intended is to determine if you are qualified for a driver's license and able to operate a motor vehicle competently.

"3. This information is used to determine your qualifications for a driver's license, compile statistical data and law enforcement purposes.

"4. If the information requested is not furnished, you may not be able to establish your qualifications for a driver's license.

"I understand that this one time information practice statement will apply to all requests for personal information made by

the Motor Vehicle Division of the Wyoming Department of Revenue and Taxation and commissioned law enforcement personnel of the State of Wyoming and of the United States of America. I understand that this form which I have signed, will be placed in my vehicle records as evidence of this notification. This is my consent to obtain information from any source which may affect my qualifications for a driver's license. I understand I can receive additional copies upon request for my own purposes.

"DEPARTMENT OF REVENUE & TAXATION

"RULE AND REGULATION

"Signature of applicant
"Date signed: _____"