**Yvonne S. ARCHER, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Otis R. Bowen, M.D., William Toby and Blue Shield of Western New York, Defendants.**

**No. 87 Civ. 8125 (KTD).**

United States District Court,
S.D. New York.

Jan. 17, 1989.

Brown & Seymour, New York City, for plaintiff; Whitney North Seymour, Jr. and Craig A. Landy, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Craig A. Stewart, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Yvonne S. Archer brought this action under the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552 (1982 & Supp. IV 1986), seeking release of documents relating to reimbursement policies of Blue Shield of Western New York ("BSWNY") under Part B of the Medicare Program. This court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B). The parties cross-move for summary judgment pursuant to Fed.R.Civ. P. 56. Archer also moves for attorneys fees under 5 U.S.C. § 552(a)(4)(E).

Archer is the designated representative for certain claimants in certain Medicare Part B proceedings. Defendant Department of Health and Human Services ("HHS") is a federal agency that has possession of the documents that Archer seeks. Defendant Otis R. Bowen, M.D., is Secretary of HHS and Defendant William Toby is Regional Administrator of the Health Care Financing Administration ("HCFA") for Region II.

Part B of the Medicare Act establishes a voluntary program of supplemental medical insurance coverage. 42 U.S.C. § 1395j *et seq.* (1982 & Supp. IV 1986). HHS administers the Medicare program through HCFA. The Secretary of HHS is authorized by statute to enter into contracts with private insurance carriers such as BSWNY to administer the Part B claims process. The carrier reviews and pays Part B claims according to procedures established by the Medicare statute. Upon receiving a claim, the carrier determines whether the services are "medically necessary," whether the charges are "reasonable," and whether the

claim is otherwise covered by Part B. *See Schweiker v. McClure*, 456 U.S. 188, 191, 102 S.Ct. 1665, 1667, 72 L.Ed.2d 1 (1982).

On February 23, 1987, Archer requested that the defendants make available certain documents relating to BSWNY's reimbursement policies under the Medicare program. No documents were produced until defendants answered the complaint in this action on January 5, 1988. At that time 46 documents were released. Portions of two of these documents were deleted. On March 17, 1988, Archer requested unredacted versions of the following documents: Letter from Mary M. McCarthy, R.N. to Fred Rosen, Chief, Policy and Technical Assistance Branch, Region II, HCFA, dated January 7, 1987 ("McCarthy Letter"), and Memorandum from Charles R. Booth, Director of Reimbursement Policy, HCFA, to Fred Rosen, dated December 29, 1986 ("Booth Memorandum"). Both documents, in unredacted form, have been submitted to the court for *in camera* inspection.

*The McCarthy Letter*

■ The McCarthy letter deals with BSWNY's change in methodology for computing approved charges for therapeutic and diagnostic nerve blocks. The redacted last paragraph of the McCarthy letter summarizes the screening procedure used by BSWNY for processing reimbursement claims for procedures identified as nerve blocks. This information is not disclosed to providers. Once a given number of nerve blocks have been performed over a specified period of time, the claim is scrutinized more closely to determine whether those services were medically necessary and should be paid—the claims are not automatically denied. Cirrincione Affidavit, ¶ 3. Medicare carriers develop "utilization review parameters" such as the nerve block screening procedure to assist staff in recognizing those claims for billed services that should be paid, denied, or reviewed more closely. *Id.* Defendants assert that release of the process used to screen the nerve block procedure would allow providers to avoid review and ensure automatic payment by submitting claims below the number of nerve blocks scrutinized by BSWNY. *Id.* ¶ 4.

Accordingly, defendants assert that the BSWNY nerve block parameter need not be disclosed under 5 U.S.C. § 552(b)(2), which provides that FOIA's disclosure provisions do not apply to matters "related solely to the internal personnel rules and practices of the agency." They contend that under that exemption the redacted portion of the McCarthy letter concerns an "internal" guideline which, if released, "significantly risks circumvention of agency regulations. or statutes." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C.Cir.1981) (*en banc*).

Archer's stated purpose for requesting disclosure is to determine whether BSWNY is violating Medicare guidelines in its reimbursement policies under Part B. Archer is concerned that the redacted portion of the McCarthy letter will reveal that BSWNY is substituting an arbitrary threshold barrier rather than individualized consideration in denying reimbursement for valid services that are entitled to coverage. Archer asserts that HCFA's contract with BSWNY and its regulations and guidelines state that medical necessity is the sole criterion for denying claims, and that frequency alone cannot be a basis for reducing or denying claims.

Archer suggests that the number of nerve blocks referred to in the redacted language be deleted, and the balance of the language made available so its application can be judged. After viewing the letter *in camera*, I agree. Production of the redacted portion with the number of nerve blocks deleted will both prevent circumvention and protect the rights of claimants to know the actual basis of denial of reimbursement. It is also consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Indeed, due process requires that Medicare claimants are entitled to information sufficient to enable them "to determine either the actual basis of a denial of reimburse-

ment or whether reimbursement has been calculated correctly." *David v. Heckler*, 591 F.Supp. 1033, 1043 (E.D.N.Y.1984). Thus the redacted portion of the McCarthy letter, with the number of nerve blocks deleted, must be turned over to Archer.

### The Booth Memorandum

█ Archer's second request concerns a paragraph redacted from the Booth Memorandum. The Booth Memorandum responds to a prior memorandum concerning the application of the comparability provision by BSWNY to determine reasonable charges for physicians' anesthesia services as well as HCFA's current position on comparability. Defendants contend that the redacted portion was properly withheld under § 552(b)(5) as within the attorney-client privilege, or, alternatively, as within the deliberative process or executive privilege.

Section 552(b)(5) shields from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption applies to "those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). Courts recognize that the exemption protects materials that would be protected under the executive privilege for the deliberative process as well as the attorney-client privilege. *Id.*

To satisfy the deliberative process/executive privilege, the material must be pre-decisional (generated prior to an agency decision) and deliberative in nature, containing opinions or advice on legal or agency policy matters. *Id.* at 151–53, 95 S.Ct. at 1516–17.

Defendants argue that the redacted portion need not be disclosed under the deliberative process/executive privilege exemption because the information is part of the give-and-take of the decision-making process. Having reviewed the redacted portion, I agree that it is clearly both "predecisional" in that it concerns policy proposals then under consideration by the agency, and "deliberative" in nature in that it is nonfactual and concerns recommenda-

tions and opinions on legal and policy matters.

The defendants have thus sufficiently demonstrated that the redacted portion of the Booth Memorandum is both predecisional and deliberative in nature, and it is exempt from disclosure under § 552(b)(5) of the Act. Because the defendants have satisfied the deliberative process aspect of the exemption, it is unnecessary to consider the assertion of the attorney-client privilege.

█ Archer has substantially prevailed and thus her cross-motion under § 552(a)(4)(E) for reasonable attorney fees is granted. Section 552(a)(4)(E) provides that a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." It is undisputed that the defendants withheld documents sought by Archer in a February 23, 1987, FOIA request, and did not provide any documents until serving their answer to this action on January 5, 1988. Because the institution of this action by Archer could reasonably be regarded as necessary and had a substantial causative effect on the delivery of the documents, assessment of fees against the defendants is warranted. *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir.1976).

In sum, the defendants' motion for summary judgment is granted insofar as the Booth Memorandum is exempted from disclosure under § 552(b)(5) of the Act. Archer's motion for summary judgment is granted insofar as the McCarthy Letter must be turned over to Archer, on the condition that the number of nerve blocks be deleted. Archer's motion for attorney fees under § 552(a)(4)(E) is granted. The cross-motions are in all other respects denied.

SO ORDERED.