Norah Chase ETTLINGER, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGA-TION and Department of Justice, Defendants.**

**Civ. A. No. 84–0066–K.**

United States District Court, D. Massachusetts.

Oct. 25, 1984.

Edward Greer, Cambridge, Mass., for plaintiff.

Robert Martin, Sp. Asst. U.S. Atty., Stephen E. Suter, Office of Legal Counsel, F.B.I., Washington, D.C., for defendants F.B.I. & Dept. of Justice.

## OPINION

KEETON, District Judge.

This is an action pursuant to the Freedom of Information Act ("Act" or "FOIA"), 5 U.S.C. § 552 (1982) in which the plaintiff, Norah Chase Ettlinger, seeks an order directing the defendants to waive all fees and costs involved in processing her requests for documents relating to Elba Chase Nelson, the head of the Communist Party of New Hampshire from 1933 until 1961, and Mrs. Nelson's two husbands, Fred Bates Chase and Charles I. Nelson. In addition, plaintiff seeks an order requiring defendant Federal Bureau of Investigation ("FBI") to produce all documents which the plaintiff has requested and supplemental

documents which detail the FOIA exemptions that the defendant has used to withhold any requested documents or portions thereof—a so-called "Vaughn Index" order. *See Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

## I.

The plaintiff is a tenured professor at Kingsborough Community College of the City University of New York, who, working under four separate research grants, is in the process of preparing a biography of Elba Chase Nelson. The plaintiff is also the granddaughter of Elba Chase Nelson.

Plaintiff originally made formal FOIA requests for the FBI "main files" of Elba Chase Nelson and her two husbands to FBI Headquarters in Washington, D.C. ("FBIHQ") on August 9, 1982. At that time, she requested a reduction or waiver of fees from FBIHQ because she intended to use the information received to write a "scholarly biography" for which she had received a Mellon Community Colleges Project Fellowship and because she intended to donate any information received to the Elba Chase Nelson Collection in the Dartmouth College library archives. The FBI summarized the requested records which had been located at FBIHQ in a letter to the plaintiff dated December 28, 1982 and informed her that her request for a waiver of fees had been denied. On May 19, 1983, plaintiff sent new formal FOIA requests to the FBI Field Offices in Portsmouth and Concord, New Hampshire, requesting all the files and documents in those two offices relating to Mrs. Nelson and her husbands. She again requested a waiver of all fees and costs for those documents. On June 8, 1983, the plaintiff filed an administrative appeal pursuant to 5 U.S.C. § 552(a)(6) with the Department of Justice, Office of Legal Policy ("DOJ–OLP") to remedy the failure of the FBI to provide the requested documents within the time required by law and its failure to grant a fee waiver. Plaintiff's appeal to the DOJ–OLP following the FBI's failure to respond was denied in a letter dated July 21, 1983. That letter made no mention of the plaintiff's appeal on her fee waiver denial.

In an FBIHQ letter dated September 12, 1983, the FBI sent the plaintiff 476 pages of documents in response to her August 9, 1982, request and indicated the FOIA exemptions under which it was withholding an additional 108 pages of documents. The FBIHQ letter also informed the plaintiff that an additional 3,241 pages of requested documents had been located in FBI Field Offices in Boston, Indianapolis, and New York in response to her May 19, 1983 requests. The FBI stated it would take no further action on those documents until the plaintiff sent written confirmation of her willingness to pay the fees for them. Plaintiff replied in a letter dated October 20, 1983, that she was willing to incur the fees, but was reserving the right to continue pursuing a fee waiver. She also requested an immediate fee waiver determination. On January 6, 1984, FBIHQ notified the plaintiff by letter of delays in processing her requested field office documents and that her request for a fee waiver would be presented before the FBI Fee Waiver Board. Plaintiff then filed this action on January 12, 1984. The Department of Justice notified the plaintiff by letter dated June 6, 1984, that her administrative appeal of the FBI's negative fee waiver decision had been denied.

I will address the issue of the plaintiff's request for a fee waiver first and then the plaintiff's request for production of documents and a "Vaughn Index."

## II.

The applicable provision of the FOIA, 5 U.S.C. § 552(a)(4)(A), authorizes agencies to impose "reasonable standard charges for document search and duplication" that are to recover only the direct costs of such operations, and further provides:

Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can

be considered as primarily benefiting the general public.

The implementing Department of Justice regulation, 28 C.F.R. § 16.9(a) (1981) restates the statute and further provides that a determination that a fee waiver is in the public interest "shall ordinarily not be made unless the service to be performed will be of benefit primarily to the public as opposed to the requester, or unless the requester is an indigent individual."

Plaintiff argues that furnishing the information to her will primarily benefit the general public in three ways: (1) in her professional capacity as a tenured professor, she plans to use the information in teaching courses at her college, delivering guest lectures at other colleges, and in making written contributions to scholarly historical books; (2) she plans to publish a biography of Elba Chase Nelson which she asserts will be the "first scholarly study on the Communist Party in New England and its local organizers" (Affidavit of Norah Chase Ettlinger, ¶ 11 (June 23, 1984)); [1] and (3) she intends to donate any information received to the already-existing Elba Chase Nelson Collection in the Dartmouth College library archives, once her book is completed.

The defendants contend that the information requested by the plaintiff would not result in any benefit to the general public nor would it be a matter of public interest for several reasons: (1) the public has not exhibited any continuing interest in the affairs of Elba Chase Nelson or her husbands; (2) their activities are not important to any current legal, social or political issues nor are they of historical significance or importance; (3) much of the releasable information is administrative, non-substantive or repetitive in nature; (4) some of the releasable records are public source materials (*e.g.*, newspaper articles) already in the public domain; and (5) as the plaintiff is Elba Chase Nelson's granddaughter, the primary benefit of releasing the records

accrues to the plaintiff, and not the general public. The defendants argue that their determination to deny the plaintiff a fee waiver was reasonable and methodical, based on a close review of the requested documents, and was therefore not arbitrary or capricious. They urge the court to uphold their denial.

The 1974 amendments to the FOIA, which included the fee waiver provision in 5 U.S.C. § 552(a)(4)(A), invested federal agencies with discretionary authority in determining when fees should not be charged. *Lybarger v. Cardwell*, 577 F.2d 764, 766 (1st Cir.1978); Conf.Comm.Rep., H.R.Rep. No. 1380, 93d Cong., 2d Sess. 8 (1974) [hereinafter cited as 1974 Conference Report], *reprinted in* House Comm. on Government Operations & Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act & Amendments of 1974 (P.L. 93–502) *Source Book: Legislative History, Texts, and Other Documents* 225 (Joint Comm. Print 1975) [hereinafter cited as 1975 *Source Book*]. Given the discretion afforded the defendants in this determination, the proper standard for judicial review of their denial of a fee waiver is whether that decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *Eudey v. Central Intelligence Agency*, 478 F.Supp. 1175, 1176 (D.D.C.1979); *Diamond v. Federal Bureau of Investigation*, 548 F.Supp. 1158, 1160 (S.D.N.Y.1982); *Blakey v. Department of Justice*, 549 F.Supp. 362, 364 (D.D.C.1982).

Plaintiff urges a de novo standard of review in district court as was used in *Rizzo v. Tyler*, 438 F.Supp. 895, 899 (S.D.N.Y.1977). 5 U.S.C. § 552(a)(4)(B) provides for a "de novo" determination by the court in cases in which the complainant seeks "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." In *Rizzo*, 438 F.Supp. at

---

**1.** The plaintiff also states in her affidavit that "the University of Illinois Press, which specializes in and is eminent in the field of labor history,

has ... indicated an interest in publishing the manuscript when completed." (Ettlinger Affidavit, *supra*, ¶ 11).

898, the court stated that "an attempt to condition disclosure [of documents] upon the payment of fees improperly imposed is the sort of improper withholding that this court may enjoin," and is therefore subject to de novo review. However, when an agency has been granted the authority to impose fees and some discretionary authority to waive those fees, a reviewing court must first determine whether the agency has, in fact, improperly refused to waive fees before it can determine whether that refusal is being used by an agency to improperly withhold records from the FOIA requester. Thus the de novo standard of review authorized by 5 U.S.C. § 552(a)(4)(B) for an agency's withholding of records should not be applied to initial judicial review of fee waiver denials under § 552(a)(4)(A). *See Diamond v. FBI*, 548 F.Supp. 1158, 1160 (S.D.N.Y.1982).

■ The issue in this case, then, is whether the defendants' determination to deny a fee waiver to the plaintiff was arbitrary, capricious or otherwise not in accordance with law. The defendants' decision must be examined in light of the statutory language and the congressional intent manifested in the statute. The standard for determining when a fee waiver *shall* be granted is when it "is in the public interest because furnishing the information can be considered as primarily benefiting the general public." 5 U.S.C. § 552(a)(4)(A). Although the statute grants discretion to the federal agencies in determining when that standard has been met, the agencies must be guided by the congressional intent of furthering liberal disclosure of government information. The FOIA reflects "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language," S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965), and nothing in the FOIA should "obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976).

■ The legislative history of the FOIA clearly indicates that Congress intended that the public interest standard for fee waivers embodied in 5 U.S.C. § 552(a)(4)(A) be liberally construed. In 1974, Congress added the fee waiver provision as an amendment to the FOIA in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests. *See* Senate Comm. on the Judiciary, Amending the Freedom of Information Act, S.Rep. No. 854, 93d Cong., 2d Sess. 11 (1974) [hereinafter cited as 1974 Senate Report], *reprinted in* 1975 *Source Book, supra,* at 163. *See also* Bonine, *Public Interest Fee Waivers Under the Freedom of Information Act,* 1981 Duke L.J. 213, 214–17 [hereinafter cited as Bonine, *Fee Waivers* ]. The 1974 Senate Report and the sources relied on in it make it clear that the public interest/benefit test was consistently associated with requests from journalists, scholars and non-profit public interest groups. *See* 1974 Senate Report, *supra,* at 10–19, *reprinted in* 1975 *Source Book, supra,* at 162–71; Bonine, *Fee Waivers, supra,* at 238–44. There was a clear message from Congress that "[t]his public-interest standard should be liberally construed by the agencies." 1974 Senate Report, *supra,* at 12, *reprinted in* 1975 *Source Book, supra,* at 164. *See also* Senate Debate and Votes, May 30, 1974, Amendment of Freedom of Information Act, S9310, S9315 (remarks of Senator Kennedy), *reprinted in* 1975 *Source Book, supra,* at 297; *Eudey v. Central Intelligence Agency,* 478 F.Supp. 1175, 1177 (D.D.C.1979). The 1974 Conference Report, in which differences between the House and Senate amendments were ironed out, retained the Senate-originated public-interest fee waiver standard and further stated "[t]he conferees intend that fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." 1974 Conference Report, *supra,* at 8, *reprinted in* 1975 *Source Book, supra,* at 225.

Further evidence of congressional intent regarding the granting of fee waivers

comes from a 1980 Senate Subcommittee report. The report stated that "excessive fee charges . . . and refusal to waive fees in the public interest remain . . . 'toll gate[s]' on the public access road to information." Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee, Agency Implementation of the 1974 Amendments to the Freedom of Information Act: Report on Oversight Hearings, 95th Cong., 2d Sess. 78 (Committee Print 1980). The report noted that "[m]ost agencies have also been too restrictive with regard to granting fee waivers for the indigent, news media, scholars . . ." and recommended that the Department of Justice develop guidelines to deal with these fee waiver problems. *Id.* at 90–95. The report concluded:

> The guidelines should recommend that each agency authorize as part of its FOIA regulations fee waivers for the indigent, the news media, researchers, scholars, and non-profit public interest groups. The guidelines should note that the presumption should be that requesters in these categories are entitled to fee waivers, especially if the requesters will publish the information or otherwise make it available to the general public.

*Id.* at 96.

On December 18, 1980, the Department of Justice's Office of Information Law and Policy ("DOJ–OILP") did issue such guidelines under the title of "Interim Fee Waiver Policy." In this memorandum, the Department of Justice stated its clear policy in compliance with congressional intent:

> The waiver provision contains the word "shall," and thus if a requester has presented to the agency a sufficiently strong showing of the statutory basis for a waiver, . . . an agency refusal to grant at least a substantial reduction of the fees may be an abuse of discretion. In other words, if the case for a waiver is sufficiently strong, it is mandatory that the agency grant at least a substantial reduction of the fees.

Department of Justice, Office of Information Law and Policy Memorandum, "Interim Fee Waiver Policy" sent to "All Federal Departments and Agencies," December 18, 1980, *reproduced in* GDS ¶ 300,794, 300,- 798. In its discussion of policy factors that should be used in determining whether the general public would benefit from furnishing the information, the DOJ–OILP analyzed several factors which emphasized the applicability of the fee waiver provision to scholars and historical researchers. The memorandum noted that the beneficial information did not have to be released directly to the general public, but could be conveyed through requesters with specialized knowledge: "benefits may be involved if specialized historical information enables historical researchers to provide better foundations of understanding for the development of future public policies . . . . [T]he term 'general public' does not necessarily mean the entire public, but it does mean . . . population groups of a national, regional or local nature, including homemakers, students . . . etc., which are not demarcated in exclusive terms, such as the stockholders of a particular company." *Id.* at GDS ¶ 300,800.

The DOJ–OILP also recommended that the requester's claim of being a "scholar" or a "historian" be examined by looking at underlying factors such as

> the requester's affiliations with such institutions as a university, government agency, or professional or civic organization; the length and nature of his/her education and experience in pertinent areas; publications, distinctions or reputation among peers or others; and whether currently or recently active in pertinent areas full-time or part-time, vocationally or avocationally.

*Id.* at GDS ¶ 300,801. This policy statement was sent to the heads of all federal departments and agencies accompanied by a cover memorandum from then United States Attorney General Civiletti which stated that he had "concluded that the Federal Government often fails to grant fee waivers under the Freedom of Information Act when requesters have demonstrated that sufficient public interest exists to sup-

port such waivers." Memorandum To: Heads of All Departments and Agencies, From: Benjamin R. Civiletti, Attorney General (January 5, 1981), *reproduced in* GDS ¶ 300,793. The Attorney General went on to state:

> Examples of requesters who should ordinarily receive consideration of partial fee waivers, at minimum, would be representatives of the news media or public interest organizations, and historical researchers. Such waivers should extend to both search and copying fees, and in appropriate cases, complete rather than partial waivers should be granted.

*Id.*

In January 1983, the Department of Justice, Office of Legal Policy (DOJ–OLP) issued a new memorandum which superseded the above-quoted guidelines. This memorandum reiterates the DOJ's commitment "to encouraging agencies to waive FOIA search and duplication fees where the disclosure of requested information will primarily benefit the general public." Department of Justice, Office of Legal Policy, "Fee Waiver Policy Guidance" (January 7, 1983), *reproduced in* GDS ¶ 300,815. The memorandum lists five general factors which agencies should consider in determining whether to grant a fee waiver. These are the factors which defendants state they analyzed in denying a fee waiver to the plaintiff:

(1) The agency "must determine whether there is a genuine public interest in the subject matter of the documents.... The 'public' to be benefited need not be so broad as to encompass all citizens, but it must be distinct from the requester alone." *Id.*

(2) The agency must examine "the value to the public of the records themselves.... [T]he public is benefited only if the information released meaningfully contributes to the public development or understanding of the subject." *Id.* at ¶ 300,816.

(3) The agency must determine "whether the requested information is already available in the public domain," *e.g.,* whether it has already been published, is available on

the public record, or in an agency's public reading room. *Id.*

(4) The agency should evaluate the "requester's identity and qualifications—*e.g.,* expertise in the subject area and ability and intention to disseminate the information to the public.... Specialized knowledge is often required to extract and effectively convey information to the public.... Therefore, requesters should specifically describe their qualifications, the nature of their research, and the purposes for which they intend to use the requested materials." *Id.*

(5) The agency should assess "any personal interest of the requester reasonably expected to be benefited by disclosure.... It is necessary to assess the magnitude of any such personal interest, and then to compare it with that of any discernable public benefit...." *Id.*

■ In construing a statute, a court should look not to a single sentence or word, but to the entire statute and its objective and policy. The court should attempt to ascertain the manifest intent of Congress and give effect to that legislative will in its interpretation of the statute. *Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). The congressional history of the FOIA's fee waiver provision and the Department of Justice's memoranda and guidelines make it clear that an "agency's decision not to waive fees is arbitrary and capricious when there is nothing in the agency's refusal of a fee waiver which indicates that furnishing the information requested cannot be considered as primarily benefitting the general public." *Fitzgibbon v. Central Intelligence Agency,* Civil No. 76–700 (D.D.C. Jan. 10, 1977); *see also Eudey v. Central Intelligence Agency,* 478 F.Supp. 1175, 1177 (D.D.C.1979).

■ Once the FOIA requester has made a sufficiently strong showing of meeting the public interest test of the statute, the burden, as in any FOIA proceeding, is on the agency to justify the denial of a requested fee waiver. *See* 5 U.S.C.

§ 552(a)(4)(B); *Hayden v. United States Department of Justice,* 413 F.Supp. 1285, 1287 (D.D.C.1976). This the agency may do by properly considering factors such as those in the Department of Justice's 1983 memorandum, *supra:* the size of the segment of the public that could benefit from the information; whether the information contributes meaningfully to the public understanding of a particular subject, whether the information is already in the public domain, the identity and qualifications of the requester, whether the personal benefit to the requester of the requested information outweighs the possible benefit to the public, and whether the requester's purpose in seeking the information is academic, historical research, journalistic, commercial or of some other public or private nature. None of these factors is alone dispositive as to whether release of the information will primarily benefit the public; all of them must be taken into account in making that determination. If, after considering all these factors in light of all of the evidence submitted, the agency still concludes that a requester has not met the public benefit test, "and the agency then denies a request for a fee waiver on that basis, its denial of a waiver will not be arbitrary and capricious." *Eudey v. Central Intelligence Agency,* 478 F.Supp. 1175, 1177 (D.D.C.1979).

■ However, neither the statute nor the Department of Justice guidelines permit an agency to make a de novo determination as to the intrinsic value of the subject matter on which information is requested. The agency is limited to evaluating whether the subject matter is one in which there is some objectively demonstrable interest by some segment of the public and whether the requested documents will make a meaningful contribution to the public understanding of that subject. What an agency may not do, particularly in the case of scholars and historical researchers who have documented their qualifications, is substitute its own judgment for that of an objectively reasonable judgment by the requester as to the scholarly, historical or academic value of the particular subject of

the requester's research. The agency may evaluate the requester's credentials and qualifications, his or her intent with regard to how the information will be used, the duplicative or repetitive nature of the information, and who will be likely to benefit from the released information and its proposed use. Nothing in the statute or its legislative history authorizes an agency, in making these evaluations, to make its own finding as to whether or not a particular subject is worthy of scholarly or historical attention and to deny a fee waiver on that basis.

■ To support a contention that a particular subject has historical or other academic value, the requester may submit evidence of interest in that subject by other parties. The other parties may be, as stated in the Department of Justice's guidelines, the public at large or some more specialized segment of the public such as members of a particular academic discipline. This evidence may include, but is not limited to, evidence of current publicity about the subject in the mass media, previously published works or articles on the same subject, recent public or private research grants given to the requester or others working on the subject, commitments from reputable publishers interested in the requester's work, letters of support from other scholars or researchers, or currently maintained archives on the subject. This type of objective support for the request will be probative if there is any dispute as to whether the subject on which information is requested is of interest to the public, and is exactly the kind of evidence provided by the plaintiff in this case.

The courts have consistently overturned agency denials of fee waivers when requesters have made a legitimate, objectively supportable showing of using the requested information for scholarly research into political and historical events. *See, e.g., Weisberg v. United States Department of Justice,* 705 F.2d 1344, 1360 (D.C.Cir.1983) (requester was a professional author who had previously published four books on

President Kennedy's assassination); *Diamond v. Federal Bureau of Investigation*, 532 F.Supp. 216, 219 (S.D.N.Y.1981), and 548 F.Supp. 1158 (S.D.N.Y.1982) (requester was a professor of sociology and history at Columbia University seeking information on government surveillance of academicians, including himself, during the McCarthy era); *Eudey v. Central Intelligence Agency*, 478 F.Supp. 1175 (D.D.C.1979) (requester was a history research associate at the University of California at Berkeley engaged in a study of relations between the United States and Italian and French trade unions during the post-World War II period); *Allen v. Federal Bureau of Investigation*, 551 F.Supp. 694 (D.D.C.1982) (requester was engaged in a program of scholarly research into the work of the United States House Select Committee on Assassinations in its investigation of President Kennedy's assassination); *Irons v. Federal Bureau of Investigation*, 571 F.Supp. 1241 (D.Mass.1983) (requesters were recognized legal scholars and historians seeking information relating to Smith Act prosecutions of Communist Party leaders); *Fitzgibbon v. Central Intelligence Agency*, Civil No. 76–700 (D.D.C. January 10, 1977) (requester sought records relating to the 1956 abduction and murder of Jesus de Galindez in the Dominican Republic); *Fellner v. United States Department of Justice*, Civil No. 75–C–430 (W.D.Wis. April 28, 1976) (requester was a journalist seeking information regarding FBI surveillance of political activists in Madison, Wisconsin). In those cases where an agency denial of a fee waiver to a scholar or researcher with established credentials has been upheld, it has been on the basis of factors which the agency may properly consider and not on the basis of whether there is any continuing or broad public interest in the subject matter requested. *See, e.g., Burriss v. Central Intelligence Agency*, 524 F.Supp. 448, 449 (M.D.Tenn.1981) (requester was instructor at Middle Tennessee State University; court found no abuse of discretion in agency's denial "based upon a mere representation that he is a researcher who plans to author a book" without supporting evidence of such a claim); *Blakey v. Department of Justice*, 549 F.Supp. 362, 364 (D.D.C.1982) (requester was a professor at University of Notre Dame Law School seeking FBI records relating to Lee Harvey Oswald and Jack Ruby; court held that all of the requested material had already been located, assembled and published and was available from a number of public domain sources).

The plaintiff in this case has made a sufficiently strong showing of her legitimate credentials as a historian and scholar. Indeed, the Federal Bureau of Investigation stated that it acknowledged her professional qualifications and competence as well as her ability to analyze, evaluate and convey the results of her research to the general public. It based its determination not to waive fees for the plaintiff in material part on its assessment of the lack of any general or continuing public interest in the subject matters on which she requested information as well as the lack of value or usefulness of the releasable materials. But, as the Department of Justice guidelines make clear, requested information need not benefit the entire public. Benefit to a population group of some size, which is distinct from the requester alone, is sufficient. Here, the requester has demonstrated that the City University of New York, Baruch College, Dartmouth College, the New Hampshire Historical Society, and two scholarly publishing houses have shown an interest in the subject matter of her research. The City University, in particular, has shown interest sufficient to support awards of four research grants to the plaintiff. Dartmouth College has shown interest sufficient to support the maintenance of a collection of Elba Chase Nelson's papers in its library archives. Therefore, the FBI's determination that there is no public interest in the subject matters for which the plaintiff has requested information is unsupported by any evidence, and is arbitrary and capricious in that it is based on an error of law as to the applicable legal standard for making that determination.

■ Similarly, in its analysis of the value and usefulness of the releasable materials and of the personal benefit to the requester versus the benefit to the public of that information, the FBI failed to properly apply the directive of the statute and the Department of Justice guidelines. The FBI rejected an objectively supportable assessment and substituted its own assessment as to the public benefit that would be gained by the disclosure of the information, including the benefit that would accrue to scholars, historians, political scientists and students indirectly from the analysis and critique which the plaintiff could provide in her publications and lectures. This it may not do. To attempt to do so was an abuse of discretion by the FBI. It is true, as the FBI found, that the plaintiff will surely gain some personal benefit from additional knowledge about her grandmother and from the enhancement of her professional status by having this information released to her. Even so, her private gain in these respects cannot reasonably be found to outweigh plaintiff's salutary purpose of disseminating widely, through publications, lectures and course work, that information and her analysis of it. As was noted earlier, the fact that a requester has some personal interest in the information requested is not alone dispositive of whether there will primarily be a discernable benefit to the public from its release. *See Diamond v. Federal Bureau of Investigation*, 532 F.Supp. 216, 219 (denial of fee waiver overturned for academician who sought his own file as well as others for historical study). The FBI's unsupported assertion in this case that, because the requester was the granddaughter of Elba Chase Nelson, the primary benefit of releasing the information would accrue to her and not the public was an arbitrary and capricious determination, reflecting the FBI's application of a legal standard different from that authorized by law.

■ Finally, the defendants argue that much of the information is already in the public domain and is repetitive or duplicated throughout the requested files. The plaintiff, however, has already spent three years extensively researching this subject, including examining all of the public sources in which the defendants claim the information exists. She states in her affidavit that the FBI "Main File" documents which have already been delivered to her contained significant information which was unavailable from any other source. In addition, the FBI claims only that about 10 percent of the 3,200 plus pages in the Boston Field Office file contain newspaper clippings. As was noted in *Vaughn v. Rosen*, 484 F.2d 820, 823–24 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), "only one side to the controversy [the government] ... is in a position confidently to make statements categorizing information, and this case provides a classic example of such a situation." Obviously the party seeking the disclosure of government information cannot state, as a matter of knowledge, that the government's characterization of its availability in the public arena is incorrect. It has not yet seen the documents it seeks. However, where the plaintiff, as here, has provided evidence that she has reasonably searched in the public domain for the information requested and has been unable to discover it, the burden must be on the agency to demonstrate that such information is in the public domain and where it reasonably can be found. *Compare Blakey v. Department of Justice*, 549 F.Supp. 362, 364 (D.D.C.1982) (denial of fee waiver upheld when Department of Justice provided evidence that same information has been given to four news organizations, one university, a microfilming firm and was available to the public in the FBI reading room in Washington, D.C.). The defendants have not met that burden in this case.

As to the repetitive or duplicative nature of the documents requested, the plaintiff has stated that she waives any request for duplicates of documents. However, since she has currently received only 476 pages of documents and has been informed that her additional requests have led to the unearthing of more than 3,200 additional

pages, it is plainly unlikely that the additional pages will be largely repetitive.

For all the foregoing reasons, the defendants' decision not to grant the plaintiff a waiver or reduction of fees pursuant to 5 U.S.C. § 552(a)(4)(A) was arbitrary, capricious and an abuse of discretion, and the defendant FBI is hereby ordered to waive the fees.

### III.

The plaintiff also seeks an order requiring the FBI to produce all of the documents requested by the plaintiff under the FOIA together with an affidavit describing the justifications for any documents, or portions thereof, withheld (a so-called "Vaughn Index") within sixty days of the date of this order. The defendant FBI states in its affidavit that it is acting with due diligence on the plaintiff's request, but that it treats all FOIA requests in order on the "first-in, first-out" basis approved in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976); The FBI affidavit states that, based on its exhaustive review procedures, an additional thirty (30) weeks from July 24, 1984, would be required for the processing of the documents and the preparation of a proper "Vaughn Index" as detailed in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

■■ As observed by the court in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 609–10 (D.C.Cir. 1976), the FOIA provides a statutory ten working-day limit for an agency's initial decision on compliance with a FOIA request (5 U.S.C. § 552(a)(6)(A)(i)), a twenty working-day limit on any appeals (5 U.S.C. § 552(a)(6)(A)(ii)), and one ten-day extension to those limits in "unusual circumstances" (5 U.S.C. § 552(a)(6)(B)). The FOIA also provides that "[u]pon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." 5 U.S.C. § 552(a)(6)(C). However, these precise

time limits bear no relationship to the enormous demands placed upon the FBI and the Department of Justice by the FOIA or to the capacity of those agencies to do the careful and thorough examination required of each document before it can be released. *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976), *Exner v. Federal Bureau of Investigation*, 542 F.2d 1121 (9th Cir.1976). As long as the agency can demonstrate that it is "exercising due diligence in responding to the [FOIA] request" and that "exceptional circumstances exist" in the sense of an overload of FOIA requests beyond the agency's capacity to handle within the statutory time limits, "the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C).

In the instant case, the FBI states that, at the time of receipt of the plaintiff's initial FOIA requests in August 1982, FBIHQ had approximately 3,451 FOIA requests pending and that plaintiff's requests had resulted in the location of approximately 3,241 pages of documents responsive to her requests which have still to be processed. These documents were located by September 1983, according to the FBI letter to the plaintiff, in response to the plaintiff's FOIA requests of four months earlier (May 19, 1983). In a letter dated October 20, 1983, the plaintiff provided assurances to the FBI that she would pay the required fees (while reserving her rights to pursue a fee waiver) and requested that processing of the documents begin immediately. In the eleven and one-half months since that letter, the plaintiff has received no documents from the FBI. The FBIHQ did notify the plaintiff by letter dated January 6, 1984, that there was a backlog of "several months" in handling classification review of documents. However, nine months later the FBI still had not completed the processing of any of the plaintiff's requests. In addition, the defendants claim that the processing of the requested documents, complete with a "Vaughn Index," cannot be completed before February 19, 1985, a total

of twenty-two months after they received the plaintiff's FOIA requests.

One purpose of the 1974 amendments to the FOIA was "to expedite the handling of requests from Federal agencies in order to contribute to the fuller and faster release of information, which is the basic objective of the Act." H.R.Rep. No. 876, 93d Cong., 2d Sess. (1974), U.S. Code Cong. & Admin.News 1974, p. 6267, *reprinted in* 1975 *Source Book, supra,* at 122. The House Committee on Government Operations noted that "excessive delay by the agency in its response is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits." *Id.* at 126. Thus, although I take cognizance of the difficulties presented to the FBI by the FOIA, I am unable to square its claim of the need for twenty-two months in order to respond adequately to the plaintiff's request with any concept of the statutory mandate that an agency must exercise due diligence in its response. I also note that, to the extent that the FBI takes unjustified positions in FOIA proceedings, it generates its own burdens and increases delays in responding to legitimate FOIA requests. In particular, when the agency's position on a specific FOIA document production or fee waiver request has been determined to be unjustified, as in the present case, the resulting special impact on the particular request warrants some degree of priority attention to that request.

Given the legislative history of the FOIA and its clear language imposing specific administrative deadlines on agency responses to FOIA requests, a court supported extension of the time to respond to the plaintiff's request in this case would clearly undermine the intent of the FOIA. Accordingly, I will grant the plaintiff's motion for expedited response and will enter an order requiring the FBI to produce all documents encompassed in the plaintiff's FOIA requests of August 9, 1982, and May 19, 1983, for which the defendants do not claim an exemption, together with a "Vaughn Index" for all redacted documents, not later than December 20, 1984.

## IV.

The plaintiff has also requested an award of attorney fees and costs in this action pursuant to 5 U.S.C. § 552(a)(4)(E).[2] An award of attorney fees and costs under the FOIA is a matter for the discretion of the district court. *Education/Instruccion, Inc. v. United States Department of Housing and Urban Development,* 649 F.2d 4, 7 (1st Cir.1981).

In order to be eligible for an award of attorney fees and costs under the FOIA, the plaintiff must meet the threshold burden of showing that she has "substantially prevailed" in the case. The plaintiff has "substantially prevailed" if she can show that the suit was necessary and that it had a causative effect on the disclosure of the requested information or the granting of a fee waiver. *See Crooker v. United States Department of Justice,* 632 F.2d 916, 922 (1st Cir.1980). I find that burden has been met by the plaintiff in this case. Her FOIA requests to the FBI of August 9, 1982 and May 19, 1983 have never received a full or adequate response. She pursued her initial requests fully with follow-up letters and additional requests for fee waiver determinations. It was not until January 12, 1984, more than eighteen months after her initial request, almost eight months after her second request, and following an FBIHQ letter informing her that there would be further delays in processing her requests, that she filed this action. Even after this action was filed, her appeal of the FBI's denial of a fee waiver was denied by the Department of Justice on June 6, 1984.

Without this lawsuit, the plaintiff would have been denied her legal rights under the FOIA. Upon the determination of this

---

**2.** "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

court that the actions of the defendants in denying her a fee waiver and in failing to produce the requested documents were arbitrary and capricious, based on an improper application of the law, the plaintiff has prevailed on both counts in her complaint.

■■■ Once the court has determined that a complainant has "substantially prevailed," the court's discretion in awarding attorney fees is to be guided by four criteria enumerated by the Senate in its consideration of the 1974 amendments to the FOIA which added § 552(a)(4)(E): "(1) The benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law." S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974), *reprinted in* 1975 *Source Book, supra,* at 171; *see also Education/Instruccion, Inc. v. United States Department of Housing and Urban Development,* 649 F.2d 4, 7 (1st Cir.1981). Although this specific listing of factors to be considered by a court was deleted from the final version of the amendment in order to avoid limiting the court to only those factors (see H.R.Rep. No. 1380, 93d Cong., 2d Sess. 10 (Conference Report) (1974), *reprinted in* 1975 *Source Book, supra,* at 226–27), numerous courts have adopted those criteria in their consideration of attorney fee awards in FOIA cases. *Education/Instruccion, Inc.,* 649 F.2d at 7; *Chamberlain v. Kurtz,* 589 F.2d 827, 842–43 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Crooker v. United States Department of Justice,* 632 F.2d at 922 (1st Cir.1980); *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 512 (2d Cir.1976); *Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704, 712 (D.C.Cir.1977); *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1364 (D.C.Cir.1977).

The benefit that the public will derive from the release of the requested information has been discussed at some length earlier in this opinion. Though it is true that the plaintiff has some personal interest in the records sought, there is no indication whatsoever, nor do the defendants claim, that the plaintiff seeks those records solely with the intention of achieving commercial or private benefit. Rather, as I have already found, the plaintiff's proposed use of the information meets the "public interest" test for fee waivers in that she intends to use the information in a manner "primarily benefiting the general public." 5 U.S.C. § 552(a)(4)(A). Therefore, as to the first three criteria which must be considered by the court, I find that the public will derive some benefit from this case and that the plaintiff was not motivated primarily by personal or commercial considerations in bringing this action to obtain compliance by the FBI and the Department of Justice with the FOIA's fee waiver and document production provisions. This situation is exactly what was envisioned by the Senate Judiciary Committee in adding the 1974 attorney fee amendment (5 U.S.C. § 552(a)(4)(E)) to the FOIA. Under the criterion of assessing the nature of the complainant's interest in the records sought, the Senate stated "a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented, but would not do so if his interest was of a frivolous or purely commercial nature." S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974), *reprinted in* 1975 *Source Book, supra,* at 171; *see also Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704 (D.C.Cir.1977) (extensive discussion of legislative history of FOIA attorney fees provision).

■■■ The remaining question, then, is whether the government's denial of a fee waiver and its requested twenty-two month delay in responding to her May 19, 1983 request had a reasonable basis in law. I find that it did not. The fee waiver denial was based on a misapplication of the clear congressional intent to have such waivers granted to legitimate scholars and historical researchers pursuing topics of bona-fide historical or academic interest. In addition

to misinterpreting the clear legislative history of this section of the FOIA, the FBI disregarded the extant case law in this area. In a September 1983 bench opinion involving the FBI, the District Court of Massachusetts analyzed the importance to the public of scholarly investigation and analysis of historical events by responsible academicians and held that the denial of a fee waiver for a reasonable FOIA request in such circumstances was clearly erroneous and an abuse of discretion. *Irons v. Federal Bureau of Investigation,* Civil No. 82–1143–G (bench opinion, D.Mass., Sept. 8, 1983) (Garrity, J.). *See also Irons v. Federal Bureau of Investigation,* 571 F.Supp. 1241 (D.Mass.1983). Similar cases involving the current defendants in which their fee waiver denials have been overturned by the courts have been discussed above. (*See, e.g., Weisberg v. United States Department of Justice,* 705 F.2d 1344 (D.C. Cir.1983); *Diamond v. Federal Bureau of Investigation,* 548 F.Supp. 1158 (S.D.N.Y. 1982); *Allen v. Federal Bureau of Investigation,* 551 F.Supp. 694 (D.D.C.1982)). In each case, the defendants sought to deny a fee waiver to responsible and accredited historical researchers for a variety of reasons. In each case, the court held that the defendants had applied the wrong standard in making their determination and gave some guidance as to the proper standard to be used. Despite this guidance in the case law, the defendants here again denied a fee waiver to a responsible scholar based on another improper application of the legal standard to be used in such a determination.

As discussed in Part II, *supra,* the defendants also improperly applied the Department of Justice's own guidelines for granting fee waivers. This is not a case in which the scholarly credentials of the requester or the interest of other parties in the subject matter of the requests could reasonably have been called into question. The mere fact that the plaintiff is a relative of the person about whom information was sought does not negate the public interest in the subject nor the public benefit that would result from the release of the information.

A court should not "award fees where the government's withholding had a colorable basis in law but would ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester." S.Rep. No. 93–854, 93d Cong., 2d Sess. 19 (1974), *quoted in Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704, 712 (D.C.Cir. 1977). That court rejected the government's claim that eligibility for an attorney fee award under § 552(a)(4)(E) required a finding of wrongful withholding, and stated "that this is an issue which should be addressed to the court's discretionary evaluation of the reasonableness of the government's resistance to a FOIA plaintiff's request, not ... requiring a judgment of wrongful withholding as a prerequisite for the exercise of that discretion." *Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d at 712, n. 34. I do not find that the denial of a fee waiver in this instance was used by the FBI or the Department of Justice for the purpose of denying the plaintiff ultimate access to the requested documents. Once the plaintiff had made an initial fee payment and had indicated her willingness to pay additional fees should she lose her appeal on the fee waiver determination, the FBI did, in fact, begin to process her requests. However, when an agency has been put on notice by courts in previous cases that its criteria for denying fee waivers to academicians, scholars, and historical researchers have been incorrect or improperly applied, and where I can find no reasonable justification for a twenty-two month lapse between the plaintiff's FOIA request and the agency's planned date for releasing that information, I find that the defendants' actions have no reasonable basis in law and have served primarily to frustrate the requester. *Compare Education/Instruccion, Inc. v. United States Department of Housing and Urban Development,* 87 F.R.D. 112, 116–17 (D.Mass.1980), *aff'd,* 649 F.2d 4 (1st Cir.1981) (plaintiff awarded reduced amount of attorney fees and costs when

court found government agency had a reasonable basis in law for withholding documents due to a lack of clear guiding precedents in case law).

For all the foregoing reasons, I rule that the plaintiff is entitled to recover reasonable attorney fees and other reasonable litigation costs in this action.

An order will be entered accordingly.

### ORDER

For the reasons stated in the Opinion of this date, it is ORDERED:

1) Defendants shall, not later than December 20, 1984, release to the plaintiff all documents and material responsive to her FOIA requests of August 9, 1982, and May 19, 1983, for which defendants do not claim an exemption;

2) By December 20, 1984, defendants shall prepare and serve upon plaintiff an itemized deletion sheet listing each and every document or portion thereof responsive to plaintiff's requests and not released to plaintiff, which deletion sheet shall set forth with respect to each withheld document or portion thereof the nature of the information contained therein, a detailed justification for the refusal to release such document or portion thereof and an explanation of any coding system relating to claimed FOIA exemptions used by the defendants. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974);

3) The defendants shall waive all fees and reproduction costs with respect to the production of the documents and materials requested by the plaintiff in her FOIA requests of August 9, 1982, and May 19, 1983, and immediately return any fees already paid to the defendants by the plaintiff in connection with those requests.

4) The plaintiff is entitled to recover reasonable attorney fees and other reasonable litigation costs in this action. The parties are directed to consult to determine if they can stipulate as to the amount of such fees and costs. If they have not agreed, the parties shall file simultaneous submissions as to their respective positions on or before January 10, 1985.